UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEFFREY ALLEN ROWE,

        Plaintiff,

  v.                                CAUSE NO. 3:20-CV-966-DRL-MGG

DAWN BUSS *et al.*,

        Defendants.

OPINION & ORDER

Jeffrey Allen Rowe, a prisoner without a lawyer, filed a motion to reconsider this court's November 23, 2020, order dismissing his case. ECF 8. Mr. Rowe brings his motion under both Federal Rule of Civil Procedure 59(e) and 60. Because he filed the motion within 28 days of the entry of judgment, the court looks to the substance of the motion to determine whether it should be analyzed under Federal Rule of Civil Procedure 59(e) or 60(b). *Obriecht v. Raemisch*, 517 F.3d 489, 493-94 (7th Cir. 2008). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact. Vacating a judgment under Rule 60(b) is permissible for a variety of reasons including mistake, excusable neglect, newly discovered evidence, and fraud." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (internal citation omitted). Mr. Rowe's motion falls squarely within Rule 59—he is arguing that the court made errors of law and fact.

Mr. Rowe's complaint alleges that a prison policy for managing COVID-19 risks is unconstitutional because it treats inmates that leave the facility to attend medical

appointments differently than inmates that leave the facility to attend court proceedings. His complaint names two defendants: Assistant Warden Dawn Buss and Commissioner Robert E. Carter, Jr.

According to Mr. Rowe, the prison permits inmates who leave the facility to receive medical care to return without being quarantined if certain conditions are met.[1] Otherwise, the inmate is quarantined for fourteen days on his return to the facility. Mr. Rowe indicates that this policy exception was implemented in response to prisoners declining to attend medical appointments because they did not want to be quarantined.

Mr. Rowe filed a motion to reduce his sentence with the LaPorte Circuit Court, and the matter was scheduled for a hearing. In advance of his hearing, Mr. Rowe inquired about whether he would be quarantined upon his return. Assistant Warden Dawn Buss responded by indicating that he would need to be quarantined upon his return. According to Mr. Rowe, she explained that some courts don't test for COVID-19, while offsite hospitals and clinics do. Mr. Rowe attended court on September 18, 2020, and he was quarantined on his return even though he met all the criteria to avoid quarantine, if he had instead attended a medical appointment.

Mr. Rowe's complaint asserts that he was quarantined in retaliation for filing his motion seeking a sentence modification. In finding that he had not stated a claim, the court noted that, "[t]o prevail on his First Amendment retaliation claim, [Mr. Rowe] must

---

[1] Namely, the prisoners cannot be out of the facility for more than twenty-four hours, they must wear a mask at all times, follow social distancing and hand washing guidelines, not come into direct contact with anyone known to have COVID-19, and remain under the direct control and observation of the transport officers.

show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). The court found that, "[e]ven assuming that a fourteen-day quarantine is a deprivation that is likely to deter First Amendment activity, and in the environment today that isn't plausible, Mr. Rowe hadn't plausibly alleged a link between his filing a motion to modify his sentence—something that has nothing to do with Ms. Buss—and her decision not to extend the policy exempting inmates who attend medical appointments from quarantine to inmates who attend court hearings." ECF 6.

Mr. Rowe takes issue with the court's conclusion that it isn't plausible that a fourteen-day quarantine is likely to deter First Amendment activity. But, this is not a basis for setting aside the court's judgment. Despite its opinion to the contrary, the court assumed for purposes of the order—as Mr. Rowe acknowledges—that a fourteen-day quarantine was sufficient to deter First Amendment activity.

Mr. Rowe also takes issue with the court's determination that he did not plausibly allege a link between his filing a motion to modify his sentence and Ms. Buss's decision not to extend the policy exempting inmates who attend medical appointments from quarantine to inmates who attend court hearings. Mr. Rowe points out that Ms. Buss knew he had filed a motion before he was quarantined because she received a request asking if he would be quarantined upon return from court. She also knew that, in Mr. Rowe's opinion, an offsite medical visit posed a greater risk of contracting COVID-19

3

than an offsite court hearing, yet she refused to alter the policy to ensure he was not quarantined. Even when these allegations are accepted as true (as they must be when screening the complaint), they do not state a claim because the key link between his First Amendment activity and the adverse action is missing. Mr. Rowe points out that it is possible for a medical provider to retaliate against a prisoner by denying medical care for filing a grievance against a correctional officer. This is true, but a complaint that alleges that the plaintiff filed a grievance against the correctional officer and that the medical provider denied medical care does not state a claim for retaliation. Where the grievance isn't against the medical provider, facts must be pleaded that provide some link between the protected speech and the adverse action. Rowe's complaint provides no link. He alleges merely that Ms. Buss knew he had engaged in protected First Amendment activity and that her policy resulted in him being quarantined. If this were enough to state a claim, then every time an adverse action followed First Amendment activity, it would give rise to a retaliation claim. Just because a rooster crows doesn't mean he caused the sun to rise. Such an interpretation would do away with the requirement that the adverse action be motivated by the First Amendment activity. This court's determination was correct, and Mr. Rowe has offered no basis for finding that he has stated a retaliation claim against Ms. Buss.

Mr. Rowe also takes issue with this court's analysis of his allegation that the policy was not rationally related to a legitimate penological interest. This court understood him to be asserting an equal protection claim and found that he had not stated a claim. In his motion to reconsider, he clarifies that he did not intend to assert an equal protection

4

clause violation. Rather, he was referencing the reasonable relationship standard governing First Amendment claims challenging policies that limit speech. *See Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, prison regulations that are reasonably related to legitimate penological interests are valid even when they restrict constitutional rights. The policy at issue here—a policy that allows inmates attending medical appointments to avoid quarantine if certain conditions are met—does not limit speech. It does not prohibit him from accessing the courts. And, he has no constitutional right to avoid brief periods of quarantine in the midst of a global pandemic. But, even if the policy did restrict a constitutional right, there is a rational relationship between the regulation and the legitimate government interest advanced—namely, preventing the spread of COVID-19. Quarantining inmates who do not abide by the safety protocols is not an exaggerated response to the threat COVID-19 poses. Declining to extend the possibility of avoiding quarantine to those who attend court hearings is not an exaggerated response to COVID-19 either. These are unprecedented times. The Constitution isn't absent during such times, but what bothers Mr. Rowe isn't of constitutional moment. A policy that looked at each situation individually to determine risk would be more narrowly tailored, but there's an administrative cost to such determinations, and the prison is already facing tremendous burdens as a result of the pandemic. A policy that makes similar exceptions for inmates that attend court might also be reasonable, but no such policy is constitutionally required. *See Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). Thus, Mr. Rowe's claim fares no better under this analysis than the equal protection analysis that the court employed in its screening order.

Mr. Rowe also reasserts his argument that, to the extent prisoners returning from court must be quarantined, even if they follow the COVID-19 safety protocols, those returning from medical appointments pose the same risk, and Assistant Warden Buss is therefore being deliberately indifferent to his safety when she does not quarantine inmates who leave for medical appointments. The court's order noted simply that this argument is without merit. Mr. Rowe notes that no controlling precedent was cited by the court and argues that, if it is justifiable to quarantine him following a court date, then those who attend medical appointments must also be a substantial risk to his health and safety. Some arguments are so utterly lacking in merit that no case citation or legal analysis is warranted. Such is the case here. Nonetheless, for the benefit of Mr. Rowe, the Eighth Amendment requires prison staff to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citations omitted). However, a prison official only violates the Eighth Amendment if he is deliberately indifferent to conditions posing a substantial risk of serious harm. *Id.* at 834-35. Deliberate indifference is comparable to criminal recklessness and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer*, 511 U.S. at 837. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599

6

F.3d 749, 756 (7th Cir. 2010) (quotation marks and citation omitted). Prison officials are not expected to eliminate the possibility of all dangers. *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991).

A reading of Mr. Rowe's complaint suggests that he himself does not believe that the class of inmates who are able to avoid quarantine following medical appointments pose a substantial risk of harm to him. He urged the court to grant injunctive relief extending the quarantine exception to inmates (like him) who attended court proceedings. That is neither here nor there; Ms. Buss's policy may not be perfect, but it is rational. There are no facts whatsoever suggesting that she has acted with deliberate indifference to Mr. Rowe's safety in forming her policies regarding COVID-19 safety following appointments outside the prison. Furthermore, though the policy offends Mr. Rowe's sense of fairness, he did not allege that he was otherwise harmed by the failure to quarantine individuals returning from medical appointments; he did not contract COVID-19 from such an individual. For these reasons, Mr. Rowe's complaint does not state an Eighth Amendment claim, and he has not provided a basis for setting aside the judgment in this case.

Mr. Rowe has not demonstrated a manifest error of law or fact. For these reasons, Mr. Rowe's motion for reconsideration (ECF 8) is DENIED.

SO ORDERED.

December 21, 2020  *s/ Damon R. Leichty*
Judge, United States District Court